AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH SEVEN ACCOUNTS STORED AT<br>PREMISES CONTROLLED BY FACEBOOK, INC. PURSUANT TO 18<br>U.S.C. § 2703 FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. §§<br>111(a)(1) and (b); 231(a)(3); 641; 1752(a)(1), (2) and (4); and 40 U.S.C. §§<br>5104(e)(2)(D) and (G) | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.  21-SC-3137 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

Located in the _____ Northern District of California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 111(a)(1) and (b) - Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon; 18 U.S.C. § 231(a)(3) - Civil Disorder; 18 U.S.C. § 641 - Theft of Government Property; 18 U.S.C. §§ 1752(a)(1), (2) and (4) - Entering and Remaining in a Restricted Building or Grounds; 40 U.S.C. §§ 5104(e)(2)(D) and (G) - Violent Entry and Disorderly Conduct on Capitol Grounds. | |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Benjamin Cundiff, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone _____ *(specify reliable electronic means)*.

Date:  _____9/29/2021_____        _____
*Judge's signature*

City and state:  _____Washington, D.C._____        Zia M. Faruqui
United States Magistrate Judge

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  21-SC-3137 |
| INFORMATION ASSOCIATED WITH SEVEN ACCOUNTS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. PURSUANT TO 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. §§ 111(a)(1) and (b); 231(a)(3); 641; 1752(a)(1), (2) and (4); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Northern District of California _____.
*(identify the person or describe the property to be searched and give its location)*:

See Attachment  A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment  B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 13, 2021 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Zia M. Faruqui _____.

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____ 9/29/2021 _____ _____

*Judge's signature*

City and state: _____ Washington, D.C. _____ _____ Zia M. Faruqui _____

United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br><br> 21-SC-3137 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**

    This warrant applies to information which is associated with the Instagram accounts identified by the names "nicholaslanguerand", "niqolas_el", "blessthisimmunity17", "patriotsawakening", "qanonvt_", "greatawakeningrecords", and "ruxperiensd" ("TARGET ACCOUNTS") which are stored at premises owned, maintained, controlled, or operated by Facebook, Inc. a company that accepts service of legal process at 1601 Willow Road, Menlo Park, California.

**ATTACHMENT B**
**Particular Things to be Seized and Procedures**
**to Facilitate Execution of the Warrant**

I.     **Information to be disclosed by Facebook, Inc. ("PROVIDER") to facilitate**
       **execution of the warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of PROVIDER, including any records that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following information to the government corresponding to the account ("TARGET ACCOUNTS") listed in Attachment A:

a.  All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

b.  All past and current usernames associated with the TARGET ACCOUNTS;

c.  The dates and times at which the TARGET ACCOUNTS and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

d.  All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the TARGET ACCOUNTS, as well as any other log file information;

e.  All information regarding the particular device or devices used to login to or access the TARGET ACCOUNTS, including all device identifier information or cookie information, including all information about the particular device or devices used to access the TARGET ACCOUNTS and the date and time of those accesses;

f.  All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

g.  All communications or other messages sent or received by the TARGET ACCOUNTS from January 1, 2021-Present;

h.  All user content created, uploaded, or shared by the TARGET ACCOUNTS, including any

comments made by the account on photographs or other content from January 1, 2021-Present;

i. All photographs and images in the user gallery for the TARGET ACCOUNTS from January 1, 2021-Present;

j. All location data associated with the TARGET ACCOUNTS, including geotags from January 1, 2021-Present;

k. All data and information that has been deleted by the user from January 1, 2021-Present;

l. A list of all the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following' list and "followers" list), as well as any friends of the user;

m. A list of all users that the TARGET ACCOUNTS has "unfollowed" or blocked;

n. All privacy and account settings;

o. All records of Instagram searches performed by the TARGET ACCOUNTS, including all past searches saved by the account from January 1, 2021-Present;

p. All information about connections between the TARGET ACCOUNTS and third-party websites and applications; and,

q. All records pertaining to communications between PROVIDER, and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the TARGET ACCOUNTS.

Within **14 days** of the issuance of this warrant, PROVIDER shall deliver the information set forth above via United States mail, courier, or e-mail to the following:

**FBI Special Agent Benjamin Cundiff**
**Email: bcundiff@fbi.gov**

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of  18 U.S.C. §§ 1512(c), 1752(a), and 40 U.S.C. §§ 5104(e)(2), as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b) Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c) Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d) Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account

3

access, use, and events relating to the crime under investigation and to the Account user;

(e) Information that constitutes evidence concerning:

    a.   Any plan to unlawfully enter the U.S. Capitol, including any maps or diagrams of the building or its internal offices;

    b.   The unlawful entry into the U.S. Capitol, including any property of the U.S. Capitol;

    c.   Any awareness of the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

    d.   Any efforts to disrupt the official proceeding that was to take place at Congress on January 6, 2021, i.e., the certification process of the 2020 Presidential Election;

    e.   Any conspiracy to illegally enter and/or occupy the U.S. Capitol Building on or about January 6, 2021;

    f.   Any breach and unlawful entry of the United States Capitol, and any conspiracy or plan to do so, on January 6, 2021;

    g.   Any riot and/or civil disorder at the United States Capitol on January 6, 2021;

    h.   Evidence concerning efforts after the fact to conceal evidence of those offenses;

    i.   Evidence concerning the identity of persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the unlawful

actors about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(f) Information that constitutes evidence concerning: (i) Account user's entry into the Capitol Building in Washington, D.C. on January 6, 2021; (ii) any loud, threatening, or abusive language and/or disorderly or disruptive conduct by the Account user while inside of the Capitol Building in Washington, D.C. on January 6, 2021; and (iii) any parade, demonstration, or picketing by the Account user while inside of the Capitol Building in Washington, D.C. on January 6, 2021.

**III. Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II. That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court. Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial, as needed.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SEVEN ACCOUNTS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. PURSUANT TO 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. §§ 111(a)(1) and (b); 231(a)(3); 641; 1752(a)(1), (2) and (4); and 40 U.S.C. §§ 5104(e)(2)(D) and (G)** | **Case No. 21-SC-3137**<br><br>**Filed Under Seal** |

*Reference: USAO Ref. # 2021R01620; Subject Accounts:* "nicholaslanguerand", "niqolas_el", "blessthisimmunity17", "patriotsawakening", "qanonvt_", "greatawakeningrecords", "ruxperiensd"

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Benjamin Cundiff, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information which is associated with seven accounts with the identifiers "nicholaslanguerand", "niqolas_el", "blessthisimmunity17", "patriotsawakening", "qanonvt_", greatawakeningrecords", "ruxperiensd" (the "TARGET ACCOUNTS") which are stored at premises controlled by Facebook, Inc. ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at 1601 Willow Road, Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since approximately August 2020.  My duties involve the investigation of a variety of violations of federal offenses including threats to life, acts of domestic terrorism, acts of international terrorism, and other violations of federal law. I have completed approximately five months of basic and specialized training at the FBI Academy, Quantico, Virginia.  During that time, I received formal training and have gained experience in interviewing and interrogation techniques, arrest procedures, search applications, the execution of search and seizures, and various other criminal laws and procedures.  I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant.  It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 111(a)(1) and (b); 18 U.S.C. § 231(a)(3); 18 U.S.C. § 641; 18 U.S.C. § 1752(a)(1), (2), and (4); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) have been committed by NICHOLAS LANGUERAND.  There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is a "court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

**PROBABLE CAUSE**

*Background – The U.S. Capitol on January 6, 2021*

6.      The United States Capitol Police ("USCP"), the FBI, and assisting law enforcement agencies are investigating a riot and related offenses that occurred at the United States Capitol Building, located at 1 First Street, NW, Washington, D.C., 20510 at latitude 38.88997 and longitude -77.00906 on January 6, 2021.

7.      At the U.S. Capitol, the building itself has 540 rooms covering 175,170 square feet of ground, roughly four acres. The building is 751 feet long (roughly 228 meters) from north to south and 350 feet wide (106 meters) at its widest point. The U.S. Capitol Visitor Center is 580,000 square feet and is located underground on the east side of the Capitol. On the west side of the Capitol building is the West Front, which includes the inaugural stage scaffolding, a variety of open concrete spaces, a fountain surrounded by a walkway, two broad staircases, and multiple terraces at each floor. On the East Front are three staircases, porticos on both the House and Senate side, and two large skylights into the Visitor's Center surrounded by a concrete parkway. All of this area was barricaded and off limits to the public on January 6, 2021.

8.      The U.S. Capitol is secured 24 hours a day by USCP. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

9.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

10.     On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which took place on November 3, 2020 ("Certification").  The joint session began at approximately 1:00 p.m. Eastern Standard Time (EST).  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

11.     As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and USCP were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

12.     At around 1:00 p.m. EST, known and unknown individuals broke through the police lines, toppled the outside barricades protecting the U.S. Capitol, and pushed past USCP and supporting law enforcement officers there to protect the U.S. Capitol.

13.     At around 1:30 p.m. EST, USCP ordered Congressional staff to evacuate the House Cannon Office Building and the Library of Congress James Madison Memorial Building in part because of a suspicious package found nearby.  Pipe bombs were later found near both the Democratic National Committee and Republican National Committee headquarters.

14.     Media reporting showed a group of individuals outside of the Capitol chanting, "Hang Mike Pence."  I know from this investigation that some individuals believed that Vice President

4

Pence possessed the ability to prevent the certification of the presidential election and that his failure to do so made him a traitor.

15.    At approximately 2:00 p.m., some people in the crowd forced their way through, up, and over the barricades and law enforcement.  The crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.  At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of law enforcement attempted to maintain order and keep the crowd from entering the Capitol.

16.    Shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  Publicly available video footage shows an unknown individual saying to a crowd outside the Capitol building, "We're gonna fucking take this," which your affiant believes was a reference to "taking" the U.S. Capitol.



17.    Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  That is, at or about this time, USCP

ordered all nearby staff, Senators, and reporters into the Senate chamber and locked it down. USCP ordered a similar lockdown in the House chamber. As the subjects attempted to break into the House chamber, by breaking the windows on the chamber door, law enforcement were forced to draw their weapons to protect the victims sheltering inside.

18.     At approximately 2:30 p.m. EST, known and unknown subjects broke windows and pushed past USCP and supporting law enforcement officers forcing their way into the U.S. Capitol on both the west side and the east side of the building. Once inside, the subjects broke windows and doors, destroyed property, stole property, and assaulted federal police officers. Many of the federal police officers were injured, several were admitted to the hospital, and at least one federal police officer died as a result of the injuries he sustained. The subjects also confronted and terrorized members of Congress, Congressional staff, and the media. The subjects carried weapons including tire irons, sledgehammers, bear spray, and Tasers. They also took police equipment from overrun police including shields and police batons. At least one of the subjects carried a handgun with an extended magazine. These actions by the unknown individuals resulted in the disruption and ultimate delay of the vote Certification.

19.     Also at approximately 2:30 p.m. EST, USCP ordered the evacuation of lawmakers, Vice President Mike Pence, and president pro tempore of the Senate, Charles Grassley, for their safety.

20.     At around 2:45 p.m. EST, subjects broke into the office of House Speaker Nancy Pelosi.

21.     At around 2:47 p.m., subjects broke into the United States Senate Chamber. Publicly available video shows an individual asking, "Where are they?" as they opened up the door to the Senate Chamber. Based upon the context, law enforcement believes that the word "they" is in reference to members of Congress.



22.    After subjects forced entry into the Senate Chamber, publicly available video shows that an individual asked, "Where the fuck is Nancy?"  Based upon other comments and the context, law enforcement believes that the "Nancy" being referenced was the Speaker of the House of Representatives, Nancy Pelosi.



23.    An unknown subject left a note on the podium on the floor of the Senate Chamber. This note, captured by the filming reporter, stated "A Matter of Time Justice is Coming."



24.     During the time when the subjects were inside the Capitol building, multiple subjects were observed inside the US Capitol wearing what appears to be, based upon my training and experience, tactical vests and carrying flex cuffs.   Based upon my knowledge, training, and experience, I know that flex cuffs are a manner of restraint that are designed to be carried in situations where a large number of individuals were expected to be taken into custody.



25.     At around 2:48 p.m. EST, DC Mayor Muriel Bowser announced a citywide curfew beginning at 6:00 p.m.

26.     At around 2:45 p.m. EST, one subject was shot and killed while attempting to break into the House chamber through the broken windows.

27.     At about 3:25 p.m. EST, law enforcement officers cleared the Senate floor.

28.     Between 3:25 and around 6:30 p.m. EST, law enforcement was able to clear the U.S. Capitol of all of the subjects.

29.     Based on these events, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day.  In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately

8:00 pm after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

30.     Beginning around 8:00 p.m., the Senate resumed work on the Certification.

31.     Beginning around 9:00 p.m., the House resumed work on the Certification.

32.     Both chambers of Congress met and worked on the Certification within the Capitol building until approximately 3 a.m. on January 7, 2021.

33.     During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

34.     Based on my training and experience, I know that it is common for individuals to carry and use their cell phones during large gatherings, such as the gathering that occurred in the area of the U.S. Capitol on January 6, 2021.  Such phones are typically carried at such gatherings to allow individuals to capture photographs and video footage of the gatherings, to communicate with other individuals about the gatherings, to coordinate with other participants at the gatherings, and to post on social media and digital forums about the gatherings.

35.     Many subjects seen on news footage in the area of the U.S. Capitol are using a cell phone in some capacity.  It appears some subjects were recording the events occurring in and around the U.S. Capitol and others appear to be taking photos, to include photos and video of themselves after breaking into the U.S. Capitol itself, including photos of themselves damaging and stealing property.  As reported in the news media, others inside and immediately outside the U.S. Capitol live-streamed their activities, including those described above as well as statements about these activities.

36.     Photos below, available on various publicly available news, social media, and other media show some of the subjects within the U.S. Capitol during the riot.  In several of these photos, the individuals who broke into the U.S. Capitol can be seen holding and using cell phones, including to take pictures and/or videos:







[1] https://losangeles.cbslocal.com/2021/01/06/congresswoman-capitol-building-takeover-an-attempted-coup/
[2] https://www.businessinsider.com/republicans-objecting-to-electoral-votes-in-congress-live-updates-2021-1.
[3]https://www.thv11.com/article/news/arkansas-man-storms-capitol-pelosi/91-41abde60-a390-4a9e-b5f3-d80b0b96141e

*Facts Specific to This Application*

37.      On or about February 25, 2021, the FBI received a tip from an individual ("Witness 1") stating that NICHOLAS LANGUERAND, who Witness 1 knows personally, had posted a picture on Instagram of himself at the U.S. Capitol during the riots.  Witness 1 said that LANGUERAND's username for both Instagram and Reddit was "blessthisimmunity17."  In the Instagram post (shown below), LANGUERAND can be seen with a trimmed beard, and wearing a distinct red knit hat with black and white stripes across a portion of the top, a black face mask around his neck, and a black sweatshirt with the word "Georgia" in gold lettering.  In addition, the collar of a plaid shirt can be seen under the sweatshirt.  Based on the background of the photograph, it appears to have been taken on January 6, 2021 from the Upper West Terrace on the exterior of the U.S. Capitol.



38.      I have reviewed the publicly available Reddit posts for the user named "blessthisimmunity17."  Among the posts, I observed that the user of the account posted what appears to be the same photograph of LANGUERAND as in the Instagram post shown above.  In addition, the same user posted a comment in response to someone else's post in which he identified himself as

NICHOLAS LANGUERAND.  I have also reviewed the North Carolina driver's license photo of NICHOLAS LANGUERAND.  The individual in the photo appears to be the same person seen in the Instagram and Reddit posts.

39.     Publicly available photos and videos taken at approximately 5 p.m. during the Capitol Riots show LANGUERAND, wearing the same distinct red knit hat, a black sweatshirt, black mask and plaid shirt, with a trimmed beard, as seen in the image above, can be seen in the area near the tunnel entrance to the U.S. Capitol in the Lower West Terrace, just below where the photograph of LANGUERAND was taken.  A portion of one such photo is below, with the individual circled in red.



40.     In these publicly available photos and videos, the individual resembling LANGUERAND is throwing a variety of objects at the law enforcement officers defending the entrance to the Lower West Terrace tunnel.  Among the objects thrown at law enforcement are what appears to be a large orange traffic barrier, a cannister of pepper spray, and a stick-like object.  The publicly available videos also show that at approximately 5:02 p.m., LANGUERAND was holding a police shield and hitting it against the ground.

41.     On April 12, 2021, Magistrate Judge Robin M. Meriweather in the United States District Court for the District of Columbia authorized a criminal Complaint charging LANGUERAND with: assaulting, resisting, or impeding an officer using a dangerous weapon, in violation of Title 18, United States Code, Section 111(a)(1) and (b); civil disorders in violation of Title 18, United States Code, Section 213(a)(3); theft of government property in violation of Title 18, United States Code, Section 641; knowingly entering or remaining in any restricted building or grounds without lawful authority to do so and engaging in disorderly or disruptive conduct therein, in violation of Title 18, United States Code, Section 1752(a)(1) and (2); and willfully and knowingly uttering loud, threatening, or abusive language, or engaging in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, in violation of Title 40, United States Code, Section 5104(e)(2)(D) and (G).

42.     On April 15, 2021, LANGUERAND was arrested at his residence in South Carolina. In connection with his arrest, law enforcement obtained LANGUERAND's cellphone, which was searched pursuant to a search warrant.  On the cellphone, law enforcement observed a number of images relating to the Capitol Riots, including photographs that appear to have been taken during the Riots.

43.     On the cellphone, law enforcement observed a number of images that appeared to be advertisements by LANGUERAND to encourage people to view his other social media accounts. For example, law enforcement found an image (shown below) dated December 18, 2020, in which LANGUERAND appeared to be advertising his other social media accounts under the name "Blessthisimmunity17."  Which is the same username as one of the TARGET ACCOUNTS.  Among the other social media accounts listed is Instagram.

13



44.     The FBI has listened to consensually recorded phone calls between LANGUERAND and others made while LANGUERAND was in custody in South Carolina.  In one of the recordings, LANGUERAND stated that he uses an email account with the name "nicklsmusic@aol.com".

45.     Records obtained from Facebook show that the email address "trucksandfighting@gmail.com" is associated with the Instagram account "blessthisimmunity17." Records obtained from Google show that the recovery email account for "trucksandfighting@gmail.com" is "Njlegionicedtea0@aol.com".

46.     Records obtained from Facebook show seven Instagram accounts affiliated with the email addresses "Njlegionicedtea0@aol.com", "trucksandfighting@gmail.com", or "nicklsmusic@aol.com".  These accounts are: 1) username "nicholaslanguerand" with account identifier "Njlegionicedtea0@aol.com"; 2) username "niqolas_el" with account identifier "Njlegionicedtea0@aol.com"; 3) username "blessthisimmunity17" with account identifier "trucksandfighting@gmail.com"; 4) username "patriotsawakening" with account identifier "trucksandfighting@gmail.com"; 5) username "qanonvt_" with account identifier "trucksandfighting@gmail.com"; 6) username "greatawakeningrecords" with account identifier

14

"trucksandfighting@gmail.com"; and 7) username "ruxperiensd" with account identifier "nicklsmusic@aol.com".

47.   On May 12, 2021, a seven count Indictment was issued in the District of Columbia charging LANGUERAND with assaulting, resisting, or impeding an officer using a dangerous weapon, in violation of Title 18, United States Code, Section 111(a)(1) and (b); civil disorders in violation of Title 18, United States Code, Section 213(a)(3); theft of government property in violation of Title 18, United States Code, Section 641; knowingly entering or remaining in any restricted building or grounds without lawful authority to do so and engaging in disorderly or disruptive conduct therein, in violation of Title 18, United States Code, Section 1752(a)(1) and (2); and willfully and knowingly uttering loud, threatening, or abusive language, or engaging in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, in violation of Title 40, United States Code, Section 5104(e)(2)(D) and (G).

## **BACKGROUND CONCERNING PROVIDER'S ACCOUNTS**

48.   PROVIDER is the provider of the internet-based accounts identified above as the TARGET ACCOUNTS.

49.   PROVIDER owns and operates a free-access social networking website named Instagram that can be accessed at http://www.instagram.com ("Instagram"). Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

50.   Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including

Flickr, Facebook, and Twitter.  When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information.  A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos.  In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.

51.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password.  This information is collected and maintained by Instagram.

52.     Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram.  Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

53.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public.  Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles.  Instagram collects and maintains this information.

54.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user.  Users may also "unfollow" users, that is, stop following them or block the user, which prevents the blocked user from following that user.

55.     Instagram allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials.  Instagram collects and maintains user content that users post to Instagram or share through Instagram.

56.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct.  Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

57.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

58.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app.  Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

59.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram.  For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

60.     Instagram also collects information on the particular devices used to access Instagram.  In particular, Instagram may record "device identifiers," which include data files and other information that may identify the particular electronic device that was used to access Instagram.

61.     Instagram also collects other data associated with user content.  For example, Instagram collects any "hashtags" associated with user content (i.d., keywords used), "geotags" that

mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

62.     Instagram also may communicate with the user, by email or otherwise, and maintains copies of communications between Instagram and the user.

63.     In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved messages for Instagram or PROVIDER subscribers), as well as Instagram-generated information about its subscribers and their use of Instagram services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Instagram with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

64.     As explained above, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the investigating authorities to establish and prove each element of the offense or, alternatively, to exclude the innocent from further suspicion. From my training and experience, an Instagram user's activity, IP log, stored electronic communications, and other data retained by the PROVIDER, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For

example, as described above, Instagram logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account user's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).[4]

65.     Based on the information above, the computers of PROVIDER are likely to contain all the material described above with respect to the Target Account, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

---

[4]     At times, social media providers such as Instagram can and do change the details and functionality of the services they offer. While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of Instagram's services in connection with submitting this application for a search warrant. Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

### REQUEST TO SUBMIT WARRANT BY TELEPHONE
### OR OTHER RELIABLE ELECTRONIC MEANS

66.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant. I submit that Special Assistant U.S. Attorney Robert Juman, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

### CONCLUSION

67.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

BENJAMIN CUNDIFF
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on September 29, 2021.

HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE